UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robert Campbell,<br><br>    Plaintiff,<br><br>  vs.<br><br>Martin O'Malley, Commissioner of Social Security,[1]<br><br>    Defendant. | Civil Action No. 5:23-5265-RMG-KDW<br><br>REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded.

I. Relevant Background

 A. Procedural History

On November 2, 2020, Plaintiff protectively filed an application for DIB alleging a disability onset date of June 21, 2019. Tr. 190-91.[2] His claim was denied initially, Tr. 86, and upon reconsideration, Tr. 87. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 117-20. A hearing was held on February 23, 2023, before ALJ Nicole Forbes-Schmitt. Tr. 52-72. Plaintiff appeared with counsel and testified, and a Vocational Expert ("VE")

---

[1] Martin O'Malley was confirmed as Social Security Commissioner on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Martin O'Malley for Kilolo Kijakazi as Defendant in this action.
[2] Although the Application Summary is dated November 24, 2020, Plaintiff's protected filing

also testified. *Id.* At the hearing, Counsel asked the ALJ to consider an amended onset date of October 7, 2020. Tr. 58. On March 24, 2023, the ALJ issued a "Partially Favorable" decision finding that Plaintiff was disabled from June 21, 2019, through May 24, 2021, and his disability ended on May 25, 2021. Tr. 30-46. On April 11, 2023, Plaintiff requested review of the decision from the Appeals Council. Tr. 16-28. The Appeals Council denied the request for review on August 22, 2023, making the ALJ's March 2023 decision the final decision of the Commissioner. Tr. 1-5. On October 20, 2023, Plaintiff filed his Complaint in this court seeking judicial review of the Commissioner's administrative determination. ECF No. 1.

      B.      Plaintiff's Background

Born in February 1969, Plaintiff was 50 years old on his alleged onset date of June 21, 2019. Tr. 231. In his initial Disability Report-Adult form dated November 24, 2020, Plaintiff noted that he completed the 12th grade in 1989, did not receive special education, and had not completed any type of specialized job training, trade or vocational school. Tr. 242. He listed his past relevant work ("PRW") as a glass installer for a glass service company (Oct. 1998-June 2019). *Id.* Plaintiff indicated that he stopped working on June 21, 2019, because of his medical conditions, which he listed as back injury, problems bending, problems standing, cannot sit for long periods, cannot walk for long periods, and limited lifting ability. Tr. 241. Plaintiff indicated that he was 6' tall, weighed 196 pounds, and his conditions caused him pain or other symptoms. *Id.*

In a Disability Report-Appeal dated May 3, 2021, Plaintiff indicated a change in his medical conditions that occurred in February 2021. Tr. 273. Plaintiff indicated: "Since my spinal fusion and attempting to do the physical therapy prescribed I have more pain with movement

---

date as reflected in the Disability Determination and Transmittal is November 2, 2020.

especially when they tried to increase my lifting. I have tingling in my toes and legs now and the doctor has stopped the PT." *Id.* Plaintiff also noted a new condition of "knee pain." *Id.* Plaintiff also indicated changes in his daily activities due to his medical conditions and noted that his "mobility has slowed down because of pain and tingling in my feet and legs. My back hurts if I stand for very long. I don't drive very much and all my daily activities are affected by the increase of pain." Tr. 276.

In a subsequent Disability Report-Appeal dated August 19, 2022, Plaintiff indicated changes in his daily activities, noting: "I continue to have issues with slowed mobility because of pain and tingling in my feet and legs. My back hurts when I stand for long. I don't drive very much. I now have pain in my upper back as well." Tr. 296.

C.  Administrative Proceedings

On February 23, 2023, Plaintiff appeared with counsel for his administrative hearing before ALJ Forbes-Schmitt. Tr. 52. VE Karl Weldon also appeared and testified. *Id.* Due to the extraordinary circumstances of the coronavirus pandemic, the hearing was conducted telephonically. Tr. 55-56. Plaintiff's counsel asked the ALJ to consider an amended onset date of October 7, 2020, the date of Plaintiff's fusion surgery. Tr. 58.

1.  Plaintiff's Testimony

In response to questions from the ALJ Plaintiff stated that he was 53 years old and did not have a high school education. Tr. 59. After some back and forth with the ALJ regarding his education, Plaintiff stated that he finished the 12th grade, but because he did not graduate or receive a diploma, he did not "complete high school." Tr. 59-60. Plaintiff confirmed that he worked for Palmetto Glass and Mirror and he "installed glass. It was showers, and a lot of lifting of labor work." Tr. 61. Plaintiff testified that the heaviest thing he would have to lift and carry

3

was "[s]torefront metal" that could weigh 150-200 pounds. *Id.* Plaintiff stated he never had any supervisory duties; he did service work installing showers. *Id.* Plaintiff confirmed that he had not worked since June 2019. Tr. 62.

Plaintiff testified that he is unable to work because he "can't do no more than a third of a day's work." Tr. 62. Plaintiff stated that he cannot sit or stand too long, and if he is upright too long he will have to use a cane. *Id.* Plaintiff stated that he spends 70 percent of his day in a recliner and if he is not in the recliner he is lying down. *Id.* Plaintiff stated that he has "a very short range of bending and turning, and [his] life has just been on hold" and he is unable to do what he used to do. *Id.* Plaintiff confirmed that in May 2021 his doctor, Dr. Aymond,[3] released him back to work saying he "had reached maximum medical improvement, and gave [him] a lifting restriction of 25 pounds." *Id.* Plaintiff testified that he told the doctor he was incapable of going back to work at light duty, but the doctor told him "that's all we can do for you," and stopped treating Plaintiff. *Id.* Plaintiff confirmed that he attended the work-conditioning and work-hardening session but the doctor "said it wasn't improving anything." Tr. 62-63. The ALJ asked if Dr. Aymond noted that Plaintiff was routinely lifting 40 pounds and Plaintiff stated that he did not recall that but that the doctor "wanted [him] to get up to 40 pounds." Tr. 63. Plaintiff testified that the cane was prescribed for him by the work-hardener doctor who instructed him that he should not move around without the cane and to use it if standing too long. *Id.* Plaintiff testified that he was sent to a workers' compensation doctor after seeing Dr. Aymond. *Id.*

In response to questions from his counsel Plaintiff confirmed that he worked for Palmetto Glass for about 27 years. Tr. 64. Plaintiff stated that he understood the ramifications of amending his onset date from June 21, 2019 until October 7, 2020, and agreed with that change. *Id.*

---

[3] The transcript phonetically identifies Plaintiff's doctor as Dr. Amin; however, the medical

4

Plaintiff affirmed when he was released from Dr. Aymond with restrictions to avoid repetitive bending and the inability to do his job, that Palmetto Glass did not offer him a job within his restrictions. *Id.* Plaintiff affirmed that since he was released from Dr. Aymond, he has not had any treatment and he has not had any health insurance to go to the doctor. *Id.* Plaintiff confirmed that although his wife works at the Marriott Hotel, she does not have health insurance available for him. Tr. 64-65.

When asked to describe his low back pain, Plaintiff stated that it gets worse as the day goes on, and on a scale of zero-to-ten, his base level of pain is a seven. Tr. 65. Plaintiff clarified that at its worst, the pain is seven-to-eight, and the lowest level of pain is two-to-three. *Id.* Plaintiff stated that his daily activities make the pain go up to seven or eight, and he cited activities of cooking, doing a little housework, and any movement like sudden bending, and standing too long. *Id.* Plaintiff testified that the pain in his right leg is worse than the left leg, and the pain in the right leg is to the calf, and the pain in the left leg is behind the knee. Tr. 65-66. As to his right leg, Plaintiff testified that at its best the pain level is two-to-three, and at its worst the pain level is seven-to-eight. Tr. 66. Plaintiff testified that the pain behind his left knee is "always there" and the pain at best is four and at worst is nine. *Id.* Plaintiff confirmed that he has trouble with his legs being weak and that is why he was given the cane. *Id.* Plaintiff testified that if he had to stand to work, he could stand 20-30 minutes. *Id.* Plaintiff stated that he could walk for 25-30 minutes. *Id.* Plaintiff stated that he could sit for 15-20 minutes if he was not comfortable, but that he "can do 30 minutes in [his] recliner." *Id.* He stated that when sitting in a normal chair he needs "a lot of pillows for [his] back." Tr. 66-67. Plaintiff testified that he could do a combination of sitting, standing, and walking for "30 minutes at the max" before needing to

---

records indicate the correct spelling is "Aymond." *See e.g.*, Tr. 859.

5

recline. Tr. 67. He confirmed that he "would be able to do about a third of the day, and then [he would] have to sit down, lay down." *Id.* Plaintiff's counsel noted that Dr. McGuire indicated some limitations on Plaintiff's activities, and Plaintiff confirmed that he is unable to squat or climb a ladder. *Id.* Plaintiff testified that if he had to bend over, his hands/fingertips would reach right above his knees. Tr. 67-68. Plaintiff confirmed those limitations have been in place since his surgery in October 2020 and have not changed. Tr. 68. Plaintiff stated that he is unable to sit in church, and his "social life is officially over." *Id.* He testified that he is at home 80 percent of the day unless there is an emergency. *Id.* Plaintiff confirmed that he collected weekly workers' compensation benefits from July 2, 2019, through August 30, 2021, and the case settled in August 2021. *Id.*

       2.    VE's Testimony

The VE classified Plaintiff's past work as glass installer, Dictionary of Occupational Titles ("DOT") number 865.684-014, medium, SVP of 3, semi-skilled, but performed by Plaintiff at the heavy exertional level. Tr. 69. The VE opined that Plaintiff would not have acquired any transferable skills to light or sedentary work and an "SVP of 3 is at the bottom of the semi-skilled range." *Id.* The ALJ asked the VE to assume a "person of the claimant's age and education, past work as you just identified, who would be limited to a light residual functional capacity. This individual could only occasionally climb, balance, stoop, kneel, crouch, and crawl. This individual would also need to avoid concentrated exposure to workplace hazards such as unprotected heights and dangerous moving machinery." *Id.* The VE testified that person could not perform Plaintiff's past work, but there would be work at the light exertional level and provided the following exemplar jobs: scrap sorter, DOT number 788.687-106, light, unskilled, SVP of 2, with 544,000 jobs in the national

economy; packager, DOT number 920.685-018, with 370,000 such jobs at the light, unskilled level; and assembler, DOT number 929.587-010, with 239,000 jobs at the light, unskilled level. Tr. 70.

The ALJ asked if such a person could perform the identified jobs if the "individual was required to use a cane for ambulation only," and the VE responded that the number of jobs would be "reduced by approximately 30 percent because of the having to use a handheld device." Tr. 70. The ALJ asked if a person limited to "lifting no more than two pounds occasionally, pushing and pulling also only two pounds, no climbing of the ladders, ropes, scaffolds, and stairs, no bending, stooping or twisting" would be capable of even sedentary work, and the VE responded in the negative. *Id.*

The VE confirmed that his testimony was "consistent with the DOT except where the DOT is silent, such as different ways of climbing, I relied on my professional experience and my knowledge in these matters." Tr. 71.

Plaintiff's counsel asked the VE if jobs would be available if the first hypothetical was changed from light to sedentary, and the VE responded in the negative. Tr. 71. Counsel asked if any of the jobs would be available if the first hypothetical remained at light, "but the hypothetical worker was going to be off task 10 percent or more of any given workday, due to limitations on his ability to stand, walk, or sit," and the VE again responded in the negative. *Id.*

In closing, Plaintiff's counsel stated that Plaintiff would not meet "the full range of light work and the sedentary DOT classification is denied, and he grids out at sedentary." Tr. 71-72.

With nothing further, the hearing closed. Tr. 72.

7

II.     Discussion

   A.     The ALJ's Findings

In her March 24, 2023 decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since June 21, 2019, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 *et seq.*).
>
> 3. From June 21, 2019, through May 24, 2021, the period during which the claimant was under a disability, the claimant had the following severe impairment: lumbar disc disorder (20 CFR 404.1520(c)).
>
> 4. From June 21, 2019, through May 24, 2021, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, from June 21, 2019, through May 24, 2021, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he is further limited to lifting, pushing, and pulling 2 pounds occasionally and no climbing, bending, stooping, or twisting.
>
> 6. From June 21, 2019, through May 24, 2021, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was an individual closely approaching advanced age on the established disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

10.     From June 21, 2019, through May 24, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11.     The claimant was under a disability, as defined by the Social Security Act, from June 21, 2019, through May 24, 2021 (20 CFR 404.1520(g)).

12.     The claimant has not developed any new impairment or impairments since May 25, 2021, the date the claimant's disability ended. Thus, the claimant's current severe impairment is the same as that present from June 21, 2019, through May 24, 2021.

13.     Beginning May 25, 2021, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listing in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

14.     Medical improvement occurred as of May 25, 2021, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).

15.     The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i)).

16.     After careful consideration of the entire record, the undersigned finds that, beginning May 25, 2021, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is further limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling [and] must avoid concentrated exposure to workplace hazards.

17.     The claimant is unable to perform past relevant work (20 CFR 404.1565).

18.     The claimant's age category has not changed since May 25, 2021 (20 CFR 404.1563).

19.     The claimant's education level has not changed (20 CFR 404.1564).

> 20. Beginning May 25, 2021, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 21. Beginning May 25, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1650(c) and 404.1566).
>
> 22. The claimant's disability ended May 25, 2021, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

Tr. 37-39, 41-45.

    B.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a

severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if the claimant can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

When determining whether a claimant who was previously found disabled continues to be disabled under applicable regulations, the ALJ is required to apply an eight-step sequential evaluation process for Title II claims. *See* 20 C.F.R. § 404.1594. It is these processes the court examines to determine whether the correct legal standards—discussed below—were applied and whether the ALJ's decision is supported by substantial evidence in the record. 20 C.F.R. § 404.1520(a)(4)-(5).

Specifically, in medical improvement cases, the ALJ considers the following sequential evaluation: (1) is the claimant currently performing substantial gainful activity; (2) does the claimant have an impairment or combination of impairments that meets or medically equals a listing; (3) has there been medical improvement since the initial disability determination; (4) if medical improvement has occurred, whether the improvement is related to claimant's ability to work; (5) if there is no medical improvement—or the improvement is not related to the claimant's ability to work—whether an exception to this step applies; (6) are the claimant's current impairments, in combination, severe; (7) if the claimant's impairments are severe, what is the claimant's residual functional capacity and can the claimant perform past relevant work; (8) if the claimant cannot perform past relevant work, whether other work exists that the claimant can perform given his residual functional capacity, age, education, and past work experience. If a

claimant can perform other work, he is no longer considered disabled; however, if a claimant cannot perform other work, his disability continues. 20 C.F.R. § 404.1594(f).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the

Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.   Analysis

Plaintiff alleges that (1) the ALJ did not properly evaluate Plaintiff's subjective symptomology, and (2) the ALJ did not properly explain her residual functional capacity ("RFC") findings as required by SSR 96-8p. Pl.'s Br. 13, 17; ECF No. 10. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff experienced medical improvement, the ALJ properly evaluated Plaintiff's subjective complaints, and substantial evidence supports the ALJ's RFC finding. Def.'s Br. 9, 11, 14; ECF No. 16. The undersigned will consider Plaintiff's argument regarding his RFC assessment first, as that impacts the remaining arguments.

   A.   The ALJ's RFC Assessment

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4). Social Security Ruling 96–8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work

14

activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

The ALJ determined that beginning May 25, 2021, Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except the claimant is further limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling must avoid concentrated exposure to workplace hazards." Tr. 43. Plaintiff argues that the ALJ did not explain how she determined Plaintiff "could stand and walk six hours in an eight-hour workday as of May 25, 2021" nor did she "cite which evidence she relied upon when she concluded that the cane was not necessary." Pl.'s Br. 20.

Plaintiff contends the ALJ erred in finding that Dr. Aymond, his treating orthopedist, supported the RFC for light work. Pl.'s Br. 22. Plaintiff notes that while Dr. Aymond's lifting restriction of 25 pounds is consistent with the standard for light work[5] (although he did not address frequency of lifting), Dr. Aymond did not opine as to the other light-work requirements of standing and walking for six hours. *Id.* Plaintiff further asserts that the consultative examiner, Dr. Maguire, "stated that activity requiring prolonged standing, walking, crawling, bending, squatting, and lifting would all be subjectively uncomfortable for [Plaintiff]." Pl.'s Br. 23. The Commissioner contends the opinions of Dr. Aymond and Dr. Maguire support the ALJ's RFC determination. Def.'s Br. 15. The Commissioner argues that Plaintiff is asking the court to impermissibly re-weigh the evidence and reach a different conclusion. *Id.*

The regulations define light work as follows:

---

[5] Actually, the regulations limit lifting for light work to no more than 20 pounds at a time.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). The glossary of definitions in SSR 83-10 notes that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 at *6. Social Security Ruling 83-14 notes that "most light jobs--particularly those at the unskilled level of complexity--require a person to be standing or walking most of the workday." SSR 83-14, 1983 WL 31254 at *4. In assessing Plaintiff with the ability to perform light work, with no restrictions as to walking or standing, the ALJ implicitly determined Plaintiff could stand and walk, off and on, for a total of six hours in an eight-hour workday.

In keeping with SSR 96-8p, the ALJ's RFC assessment "must be based on *all* of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, reports of daily activities, lay evidence, recorded observations, medical source statements, and effects of symptoms including pain. SSR 96-8p, 1996 WL 374184 at *5 (emphasis in original). The record contains evidence that contradicts the ALJ's RFC determination. For example, at his February 2023 administrative hearing Plaintiff testified that he could not do more than "a third of a day's work" and could not sit or stand too long. Tr. 62. He testified that due to pain in his back and legs, he could sit, stand, or walk for only 30 minutes before needing to recline or lie down. Tr. 65-67. Dr. Maguire indicated in his report that activity requiring a lot of prolonged standing or walking would be "subjectively uncomfortable" for Plaintiff. Tr. 769. The ALJ considered Plaintiff's statements about his symptoms but, citing to

Dr. Aymond's May 24, 2021 treatment record, she found them to be "inconsistent because he presents on exam with a normal gait and full strength." Tr. 44. The ALJ found Dr. Maguire's limitations to be "somewhat vague" but she "noted they are not completely inconsistent" with her RFC determination. *Id.* However, the ALJ did not explain sufficiently her reasons for finding Plaintiff capable of standing and walking for six hours in an eight-hour day. *See Powell v. O'Malley*, No. CV 6:23-919-RMG, 2024 WL 194738, at *4 (D.S.C. Jan. 18, 2024) (concluding "that a limitation on prolonged standing is incompatible with a[n] RFC of light work."). Additionally, the ALJ noted that "although he occasionally uses a cane, it has not been noted to be necessary." Tr. 44. The ALJ provides no further evaluation of the use of an assistive device for light work, but the undersigned notes that he did question the VE regarding use of a cane for ambulation. Tr. 70. However, the ALJ's analysis may need to be revised if her RFC assessment changes based on her additional evaluation regarding standing and walking.

Without further explanation from the ALJ, the undersigned is unable to determine that her RFC assessment is supported by substantial evidence. *Vanadore v. Berryhill*, No. CV 5:18-1097-RMG, 2019 WL 2912482, at *6 (D.S.C. July 8, 2019) (finding there was not substantial evidence in the record to support the finding that the plaintiff could stand and walk six hours in an eight-hour day). The undersigned recommends remand so that the ALJ may further consider her RFC assessment.

  B. Remaining Allegations of Error

Plaintiff also argues that ALJ failed to evaluate her subjective symptoms properly. Pl.'s Br. 13-17. Because the court has determined that the errors in ALJ's RFC assessment warrant remand, the court declines to further address this remaining claim of error as the ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration of this claim. *See*

17

*Hancock v. Barnhart*, 206 F.Supp.2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo). Accordingly, should the district court adopt this recommendation, the ALJ is to also take into consideration Plaintiff's remaining allegations of error on remand.

IV.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's finding was supported by substantial evidence or reached through application of a correct legal standard.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded.

IT IS SO RECOMMENDED.

September 25, 2024                                            Kaymani D. West
Florence, South Carolina                                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**